**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRI LITTLE, *an individual*,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATURESTAR NORTH AMERICA, LLC, *a Minnesota Limited Liability Company*; TARGET CORPORATION, *a Minnesota Corporation*,<br><br>　　　　Defendants. | Case: 1:22-cv-00232-JLT-EPG<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>(Doc. 23) |

Terri Little brings this putative class action lawsuit against Defendants NatureStar North America, LLC and Target Corporation for the allegedly false and deceptive business practice of advertising and marketing single-use tableware and food storage bags as "compostable," when, according to Plaintiff, they contain perfluoralkyl and polyfluroalkyl substances ("PFAS"), which are not compostable.  (FAC, Doc. 22 at ¶¶ 1–3, 20.)  Pending is Defendants' Motion to Dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(1), challenging Plaintiff's Article III standing to bring this case.  For the following reasons, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## I.　　BACKGROUND

A.　　<u>Compostable Products & PFAS</u>

Compostable products are those that are "capable of being broken down into non-toxic

1

elements (compost)[,] which are beneficial to the soil." (FAC, Doc. 22 at ¶¶ 1, 18 ("[C]ompost is comprised largely of 'decayed organic matter' that 'is used for fertilizing and conditioning land.'") (footnote and citation omitted), 27.)  Many environmentally-conscious consumers, who are concerned with the "proliferation of trash and waste" intentionally purchase compostable products, and "are willing to pay more for such products, which often cost significantly more than non-compostable disposable bags, plates, and bowls." (*Id.* at ¶¶ 2, 16.)

"PFAS are highly persistent synthetic fluorinated chemicals which have been associated with a variety of negative health effects such as cancer, developmental toxicity, [and] immunotoxicity," and due to their strong synthetic resistance, PFAS chemicals "do not break down and never become part of usable compost." (*Id.* at ¶¶ 20–22.)  When introduced into the environment, PFAS "seep into and contaminate both land and water and then never leave." (*Id.* at ¶¶ 21, 22 ("PFAS'[s] characteristic carbon-fluorine bonds make them extremely resistant to degradation, even at high temperatures. . . these chemicals do not degrade in the environment.").)  Thus, if introduced into the soil, PFAS will contaminate crops grown in that soil, and the meat from the farm animals that graze there. (*Id.*)  If compost is contaminated with PFAS, then the PFAS will contaminate the soil that is "treated or fertilized with that compost," and subsequently, whatever is grown or grazed in that soil. (*Id.*)

Though PFAS are highly toxic, they have "grease and water-resistant properties," and are thus "often added to paper plates, bowls, food storage, and packaging products (together, 'Foodware')," leading to "increased PFAS exposure in humans and in the environment." (*Id.* at ¶¶ 24, 26 (alleging PFAS can affect the human immune system, cause cancer, and disrupt thyroid hormone production).)  Foodware that contains PFAS may contaminate its food items and leach PFAS "from the product into the compost stream, contaminating the compost itself and the organic matter grown using that composted material." (*Id.* at ¶ 25.)  Therefore, environmentally conscious consumers who actively try to avoid purchasing PFAS-contaminated products, look to private organizations, such as TÜV Austria and the Biodegradable Products Institute ("BPI"), which certify that a product is compostable. (*Id.* at ¶¶ 28, 34.)

///

B.      Plaintiff's Purchase of Products

Plaintiff is an environmentally conscious consumer and, when given the choice, opts to purchase products that are compostable, recyclable, or reusable. (Doc. 22 at ¶¶ 8, 16.) In 2021, Plaintiff visited a Target store in Hanford, California, and, relying on Defendants' representations that certain products were compostable, purchased "a package of twenty 9" dinner plates, a package of twenty 16 oz. cereal bowls, one package of quart-sized food storage bags, and one package of gallon-sized food storage bags" [hereinafter, "Products"]. (*Id.* at ¶¶ 4, 8.) The Products' labeling as "compostable" "was a determining factor in Plaintiff's decision to purchase each of the foregoing Products," and was why she "specifically selected" to purchase them. (*Id.* at ¶¶ 5, 8.) Though the Products bore a compostability certification from both TÜV Austria and BPI,[1] when Plaintiff sent the Products for independent testing by a third-party laboratory, the "test results indicate[d] the presence of significant amounts of PFAS within the bowls and plates [she] purchased, in direct contradiction of Defendants' claims that their Products are compostable." (*Id.* at ¶¶ 28–29, 34–37.) Had she known that the Products were not actually compostable, Plaintiff "would not have purchased [them] and/or would not have paid the premium price for [them]." (*Id.* at ¶ 5; *see also id.* at ¶ 8 ("Had Plaintiff known that the Products contained PFAS chemicals, and thus could not break down into compostable material, she would not have purchased the Products.").) Plaintiff alleges that other environmentally conscious consumers who purchase these Products in the belief that they are compostable are also "unwittingly hindering sustainable composing [sic] efforts." (*Id.* at ¶¶ 30, 31.)

Plaintiff brings this putative class action lawsuit, in relevant part, on behalf of: "All persons who purchased the Products for personal, family or household purposes in California (either directly or through an agent) during the applicable statute of limitations period (the '**Class**')." (Doc. 22 at ¶ 41 (boldface in original).) Plaintiff brings six causes of action for, *inter alia*, violations of provisions of California's Unfair Competition Law, Consumers Legal

---

[1] Plaintiff alleges that at the time of purchase, the "products were not listed on BPI's website as being certified by BPI as being compostable." (Doc. 22 at ¶ 35.) Furthermore, the packaging for the storage bags states they were made in Malaysia, however, Plaintiff received confirmation from BPI that "no factory in Malaysia had been certified by BPI as producing compostable resealable food storage bags." (*Id.* at ¶ 36.) Instead, when Plaintiff removed the sticker placed over the food storage bag, it states that the bags were manufactured in China. (*Id.* at ¶ 37.)

3

Remedies Act, the California Public Resources Code, Section 5 of the Federal Trade Commission Act, and theories of breach of express warranty and unjust enrichment.  (Doc. 22 at 14–24.)  Specifically, Plaintiff seeks, in part, compensatory and punitive damages, as well as a Court Order "preliminarily and permanently enjoin[ing] Defendants from conducting their business through the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint[.]" (*Id.* at 24–25.)  Now pending is Defendants' Motion to Dismiss the FAC, brought pursuant to Federal Rule of Civil Procedure 12(b)(1), principally challenging Plaintiff's Article III standing to bring this action.[2]  (Doc. 23.)  As the motion is fully briefed, (Opp'n, Doc. 24; Reply, Doc. 25), and ripe for consideration and disposition, the Court turns to the analysis of Defendants' motion.

## II.     LEGAL STANDARD

A.  Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a claim for relief for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  It is well-established that Article III "[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court."  *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (citing *Spokeo v. Robins*, 578 U.S. 330, 339 (2016)).

The Supreme Court "has established that the irreducible constitutional minimum of standing contains three elements that a plaintiff must plead and—ultimately—prove."  *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (internal quotation marks and citation omitted).  "First, the plaintiff must have suffered an injury in fact that is both concrete and particularized and actual

---

[2] Though Defendants' Notice of Motion represents that they move to dismiss the FAC "pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), and 12(b)(6)," (Doc. 23 at 2), the body of Defendants' motion only raises a challenge pursuant to Rule 12(b)(1), attacking the Complaint for failing to establish a concrete injury, insufficient ripeness, and deficient establishment of probabilistic standing.  (*See generally* Doc. 23.)  Accordingly, the Court limits its analysis to only those arguments raised, pursuant to Rule 12(b)(1) alone.

or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citation omitted). "Second, the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of." *Id.* (internal quotation marks and citation omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citation omitted).

"'The party invoking federal jurisdiction bears the burden of establishing' the [three] elements of standing, and 'each element must be supported in the same way as any other manner on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Stavrianoudakis v. U.S. Fish and Wildlife Serv.*, 108 F.4th 1128, 1136 (9th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024) (internal quotation marks and citation omitted); *see also Murthy v. Missouri*, 144 S. Ct. 1972, 1985–86 (2024).

### III. DISCUSSION

Defendants attack Plaintiff's FAC for lack of standing based on three grounds: Defendants argue that Plaintiff has failed to allege a concrete injury; that Plaintiff's injuries are not yet ripe; and that the FAC fails to support an entitlement to an injunction. (Doc. 23 at 6–12.)

A. <u>Concrete Injury</u>

Defendants contend that Plaintiff has failed to plead a concrete injury because, in Defendants' view, Plaintiff failed to "plead[] that she visited the BPI website," "never pleads that the country of origin is important to her or that she even read the country of origin before purchasing the products," and because she "never pled that she was aware of how food storage bags must be labeled under California law[.]" (Doc. 23 at 6.) In conjunction with each argument, Defendants assert that Plaintiff fails to allege "how she has suffered a physical or monetary harm associated with [each] allegation." (*Id.*)

Defendants focus on allegations that are tangential to or supportive[3] of Plaintiff's central allegations: that "if Plaintiff had known that the Products were not actually compostable as claimed by Defendants, [she] would not have purchased the Products and/or would not have paid the premium price for [them]." (Doc. 22 at ¶ 5; *see also id.* at ¶ 8 ("Had Plaintiff known that the Products contained PFAS chemicals, . . . she would not have purchased the Products.").) Independent of class action consumer lawsuits, it is well-established that "a monetary injury" satisfies Article III's requirements. *Food and Drug Admin. v. All. for Hippocratic Medicine*, 602 U.S. 367, 381 (2024) (citations omitted); *e.g.*, *Jama v. State Farm Mut. Auto. Ins. Co.*, No. 22-35449, 2024 WL 3853695, at *11 (9th Cir. Aug. 19, 2024) (awaiting formal publication) ("That is a classic pocketbook injury sufficient to give a plaintiff standing . . . the injury here—a lighter wallet—has long been traditionally recognized as providing a basis for a lawsuit in American courts.") (internal quotation marks and citations omitted).

The Ninth Circuit has addressed the issue of concrete harm under these circumstances, stating that "the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (collecting cases). "Thus, a consumer's allegation that she would not have bought the product but for the misrepresentation is sufficient to allege causation and to allege economic injury." *Id.* at 965–66 (cleaned up) (internal quotation marks, ellipses, brackets, and citations omitted); *see also DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1241 (9th Cir. 2024) (plaintiff may establish standing by alleging "she desires to purchase and would purchase a product if she was able to trust the product's advertising") (citation omitted); *Hawkins v. Kroger Co.*, 906 F.3d 763, 772 (9th Cir. 2018) ("[I]t is sufficient for a consumer to allege that she bought a product she would not have otherwise bought if she had known the product was harmful.") (citation omitted); *e.g.*, *In re Trader Joe's Co. Dark Chocolate Litig.*, No. 3:23-cv-0061-RBM-

---

[3] The Court agrees (*see* Doc. 24 at 5) that Plaintiff is not required to "allege facts showing how she came to believe that the . . . product was misrepresented." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (internal quotation marks and citation omitted). Also, Plaintiff is not required to allege that the country of origin was important to her, that she visited the BPI website, or that she understands California's law regarding product labeling. (Doc. 23 at 6.) There are no heightened pleading standards in this case and this information is immaterial to assessing whether Plaintiff has suffered a concrete injury.

1  KSC, 2024 WL 1319725, at *12 (S.D. Cal. Mar. 27, 2024) (awaiting formal publication)
2  (plaintiffs adequately alleged an economic injury in stating they purchased high-quality dark
3  chocolate products but were unaware they contained heavy metals and would not have purchased
4  them had that information been disclosed).  Plaintiff has sufficiently pleaded allegations that
5  conform to this economic theory of injury-in-fact.  Accordingly, Defendants' motion is **DENIED**
6  on this basis.

7         B.       <u>Ripeness</u>

8         Defendants maintain that Plaintiff "assert[s] that the proper amount of PFAS in usable
9  compost is zero," however, this "twist[s] current FTC guidance into a zero-PFAS position that the
10 FTC has never adopted and that the state of California has refused to adopt."  (Doc. 23 at 7.)
11 Defendants represent that the "State of California passed a bill that goes into effect in 2026,
12 allowing products to be labeled as compostable so long as the product contains no more than 100
13 part per million of PFAS." (*Id.*) Defendants dispute Plaintiff's reliance on the FTC's Green
14 Guides, arguing that "Plaintiff fails to focus on the full sentence" of Title 16 C.F.R. § 260.7(b) in
15 her Complaint, because Defendants' Products may "become part of[] usable compost."  (*Id.* at 8.)
16 Defendants continue, "Plaintiff has no evidence that the FTC's Green Guides have claims that
17 zero-PFAS is required for 'usable compost.'"  (*Id.*)  Accordingly, Defendants argue that "Plaintiff
18 invites this Court to address this unripe, abstract issue where the state of California has already
19 signed a law addressing it that purposely allows manufacturers five years to comply," and that
20 will allow for "a maximum of 100 parts per million of PFAS" in "usable compost."  (*Id.* at 8–9.)
21        Throughout their discussion, Defendants repeat their contentions that Plaintiff's claims are
22 not *ripe*—however, they make no mention whatsoever regarding the plausibility of Plaintiff's
23 allegations as a matter of law.  (*See, e.g.*, Doc. 23 at 7 ("Plaintiff's Compostability Claims Lack
24 Article III Standing Because They are Not Ripe.") (boldface omitted) ("In short, the issue
25 Plaintiff seeks to have this Court decide is not ripe under Article III."), 7–8 (discussion of legal
26 standard for ripeness), 8 ("Plaintiff bases its unripe argument on misconstruing the language
27 contained within the [FTC's] Green Guides."), 9 ("For the foregoing reasons, Plaintiff's
28 allegations regarding the Compostability Claims should be dismissed under Rule 12(b)(1) in their

entirety for not being ripe for adjudication under Article III.").) However, Article III "requires that a plaintiff's claim be ripe for adjudication." *Stavrianoudakis v. U.S. Fish and Wildlife Serv.*, 108 F.4th 1128, 1138 (9th Cir. 2024) (citation omitted). The doctrine is separated into two components: constitutional ripeness and prudential ripeness. *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). "Constitutional ripeness overlaps with the injury-in-fact element of Article III standing, and therefore the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." *Stavrianoudakis*, 108 F.4th at 1139 (internal quotation marks and citation omitted); *Twitter*, 56 F.4th at 1173 ("The constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry.") (citation omitted). Because the Court has already concluded that Plaintiff has a sufficiently concrete and definite injury-in-fact, "constitutional ripeness is satisfied." *Stavrianoudakis*, 108 F.4th at 1139.

Prudential ripeness "concerns the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (internal quotation marks and citation omitted). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* (internal quotation marks and citation omitted) *see also Tingley v. Ferguson*, 47 F.4th 1055, 1070 (9th Cir. 2022) (holding that a licensed marriage and family therapist's constitutional challenge of Washington's ban on conversion therapy was prudentially ripe because (1) "the law Tingley challenges is final," and "represents Washington's final decision" in banning conversion therapy, (2) "is binding on providers like Tingley who must immediately comply with its terms," (3) the action presents "purely legal" issues of constitutional law, and (4) Tingley's claims "did not leave incomplete hypotheticals or open factual questions"). Questions of statutory interpretation are purely legal questions that are prudentially ripe. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479 (2001) (issue is ripe where it "is purely one of statutory interpretation that would not benefit from further factual development of the issues presented.") (internal quotation marks and citation omitted); *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021) ("The issue here is fit for review because it is a purely legal question presented in the concrete setting of the EPA's approval of the specific plan adopted by the State.") (citation

omitted).

Several of Plaintiff's claims rely on the FTC's "Green Guides." (*See, e.g.*, Doc. 22 at 14–20.) "The Green Guides are more than persuasive authority in California; they have been codified as law." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 784 (9th Cir. 2024) (citing Cal. Bus & Prof. Code § 17580.5). For instance, Section 17580.5 of the California Business and Professions Code proscribes that it "is unlawful for a person to make an untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied. In this section, 'environmental marketing claim' shall include any claim contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission." Cal. Bus & Prof. Code § 17580.5(a) (2021). Plaintiff's allegations rely on Title 16 C.F.R. § 260.7(a) of the Green Guides, which states that "[i]t is deceptive to misrepresent . . . that a product or package is compostable," as well as § 260.7(b), which provides that "[a] marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost (e.g., soil-conditioning material, mulch) in a safe and timely manner[.]" (*See also* Doc. 22 at ¶ 19 (relying on 16 C.F.R. §§ 260(d)), 52 (relying on 16 C.F.R. §§ 260(a)–(c)).)

In this way, Plaintiff's FAC presents a legal question: the application of the Green Guides' definition of "compostable." Defendants admit as much in their motion, as they point the Court to the definition of "compostable" contained in Section 42357(g)(1) of the California Public Resource Code, (Doc. 23 at 9), which Plaintiff also relies on in her FAC. (*See* Doc. 22 at ¶¶ 38, 40, 59 (alleging breach of Section 42357.5), 60 (same), 64, 91.) Though Defendants insist that Plaintiff's claims are not ripe because of a pending 2026 amendment, this argument is flawed for several reasons. First, even in 2021, Section 42357 provided guidance for interpreting the term "compostable." *See* Cal. Pub. Res. Code §§ 42357(a)(1) (2021) ("[A] person shall not sell a plastic product in this state that is labeled with the term 'compostable' . . . unless, at the time of sale, the plastic product meets the applicable ASTM standard specification . . . or, if applicable, the plastic product has OK compost HOME certification, as provided in paragraph (4)."). Second, the definition of "compostable" appears to be independent from its definition in the

9

Green Guides. *See id.* § 42357(e) (2021) ("A product that is in compliance with this chapter shall not, solely as a result of that compliance, be deemed to be in compliance with any other applicable marketing requirement or guideline established under state law or by the Federal Trade Commission."). Even if the Public Resource Code's amendments are yet to take effect, and even if they were dispositive in interpreting the definition of "compostable" in the Green Guides, this does not demonstrate that Plaintiff has not suffered a prudentially ripe injury.

On the other hand, Plaintiff's claims are "primarily legal" and concerning the definitions of "compostable" set forth in the FTC's Green Guides and in the Public Resource Code. *Stavrianoudakis*, 108 F.4th at 1139. At least in terms of Plaintiff's allegations, she has demonstrated that she suffered a cognizable financial injury in her purchase of allegedly mislabeled compostable Products. *Id.* This injury is final and has occurred. *Id.* Thus, because Plaintiff has suffered more than possible financial loss, the Court is satisfied that the hardship requirement is met also. *See Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) ("To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss."). Accordingly, both constitutional and prudential ripeness requirements are met. Defendants' motion is **DENIED** on this basis.

      C.     <u>Injunctive Relief</u>

Defendants take issue with Plaintiff's request for injunctive relief, arguing that the FAC fails to show any "imminent threat to the plaintiff, which is entirely implausible in this situation since Plaintiff's alleged 'injury' is complete," and that she therefore lacks standing to pursue this remedy "because she does not allege that she or any of the unnamed plaintiffs will continue to purchase the Products." (Doc. 23 at 10–11.) In response, Plaintiff points the Court to paragraphs 61 and 75 of its FAC, wherein it alleges "that Defendants' misrepresentations have rendered consumers unable to rely on the Defendants' ongoing claims that the Matter brand products at issue are in fact compostable as claimed on their packaging without any degree of truthfulness as to those representations." (Doc. 24 at 9.) Thus, in Plaintiff's view, "a consumer's inability to rely on the truthfulness of the representations on the product's packaging" poses a future risk of

harm, making injunctive relief appropriate. (*Id.*) For this requested remedy alone, the Court agrees with Defendants.

"In order to establish standing for injunctive relief, a plaintiff must show that [she] is under threat of suffering injury in fact that is concrete and particularized[,] [and] the threat must be actual and imminent, not conjectural or hypothetical." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024) (internal quotation marks and citation omitted). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Id.* (internal quotation marks and citation omitted). In consumer fraud cases, "plaintiffs can satisfy the imminent injury requirement by showing they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to." *Id.* (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 856, 970 (9th Cir. 2018)).

Turning to the FAC, paragraphs 61 and 75 mirror each other, alleging:

> An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203. Plaintiff has standing to demand injunctive relief because Plaintiff, and by extension[,] the Class, have suffered a concrete injury: an inability to rely on the validity of the information advertised on Defendants' Products[,] rendering Plaintiff, the Class, and average consumers unable to rely on the Products' representation of being 'compostable' without any degree of confidence in the truthfulness of such representations. Injunctive relief would provide redress for this injury by requiring that Defendants only make truthful representations as to the compostability of the Products upon which a reasonable consumer could rely.

(Doc. 22 at ¶ 61; *see also id.* ¶ 75 (same).)

Though Plaintiff recites the correct standard of *reliance*—*i.e.*, that Plaintiff and the Class cannot "rely on the validity of the information advertised" on the Products, *Davidson*, 889 F.3d at 967—Plaintiff has failed to bring any allegations of *future* conduct (e.g., purchase of Products or desire to purchase Products in the future). (Doc. 22 at ¶¶ 61, 75.) The Ninth Circuit did not abandon this Article III component, and in fact, looked to the plaintiff's allegations of future reliance and desire to purchase the same product in concluding that she had properly alleged imminent harm to request injunctive relief:

> In some cases, the threat of future harm may be the consumer's plausible allegations

11

>that she will be unable to rely on the product's advertising or labeling **in the future, and so will not purchase the product although she would like to** . . . In other cases, the threat of future harm may be the consumer's plausible allegations that she **might purchase the product in the future**, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. . . .
>
>Davidson alleged that she 'continues to desire to purchase wipes that are suitable for disposal in a household toilet'; would purchase truly flushable wipes manufactured by Kimberly-Clark if it were possible'; 'regularly visits stores where Kimberly-Clark's 'flushable' wipes are sold'; and is continually presented by with Kimberly-Clark's flushable wipes packaging but has 'no way of determining whether the representation 'flushable' is in fact true.'

*Davidson*, 889 F.3d at 969–971 (cleaned up) (emphases added) (internal brackets, ellipses, citations omitted).

*Davidson* confirms that a plaintiff must allege some type of continuous or prospective intent or desire to purchase the allegedly deceptive product in the future to seek injunctive relief. *See id.*; *Compare Scheibe v. Esupplements, LLC*, 681 F. Supp. 3d 1101, 1109 (S.D. Cal. 2023) ("Plaintiff is correct that he stated his reliance on Defendant's representations when purchasing the Products, but the Complaint lacks any allegation indicating Plaintiff's continued desire or intent to purchase the Products in the future. Accordingly, the Court finds that Plaintiff lacks standing to pursue injunctive relief.") (footnote and citations omitted) *with DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 962 (N.D. Cal. 2023) ("Like the plaintiff in *Davidson*, DiGiacinto has sufficiently alleged that he will be unable to rely on the advertising or labeling of the children's product *in the future*.") (emphasis added) *and Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732, 741 (N.D. Cal. 2023) (plaintiffs adequately alleged injunctive relief because they alleged that they "would likely purchase [Products] again in the future" and "alleged that they regularly visit stores where these products are sold and are unable to determine the amount of digestible protein prior to purchasing them.") (internal quotation marks and citation omitted). As such, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Plaintiff's request for injunctive relief. However, because the Court dismisses this claim on Article III jurisdictional grounds, and because this deficiency is easy to cure, the Court **GRANTS** Plaintiff leave to amend her Complaint. *Bolden-Harge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1221 n.1 (9th Cir. 2023).

### IV. CONCLUSION AND ORDER

Based upon the foregoing, it is **ORDERED** that:

(1) Defendants' Motion to Dismiss (Doc. 23) is **GRANTED IN PART AND DENIED IN PART**.

(2) The Motion to Dismiss Plaintiff's requests for monetary damages is **DENIED**.

(3) Plaintiff's request for injunctive relief is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff **SHALL** file the amended complaint or a notice that she will not file an amended complaint **within 21 days**. If no amended complaint is filed, the defendants SHALL file their answers within 21 days thereafter.

IT IS SO ORDERED.

Dated:   **September 11, 2024**

UNITED STATES DISTRICT JUDGE